UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DAVID GARIBAY,**

    *Plaintiff*,

v.   Case No. 5:24-CV-0214-JKP-RBF

**G.T. SIRIZZOTTI, LTD.,**

    *Defendant*.

## ORDER GRANTING MOTION TO DISMISS

Before the Court is Defendant's Motion to Dismiss (ECF No. 12). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks to dismiss this action. Prior to filing the motion, Defendant complied with this Court's Standing Order regarding Rule 12(b)(6) motions. While Plaintiff initially indicated an intent to file an amendment, he made no such filing. Defendant thereafter filed its motion. Plaintiff has filed a response (ECF No. 13), and Defendant has filed a reply brief (ECF No. 14). For the reasons that follow, the Court grants the motion.

Through its operative pleading, Plaintiff asserts that Defendant violated 42 U.S.C. § 1981 by discriminating and retaliating against him because of his race. *See* Pl.'s First Am. Orig. Pet. (ECF No. 1-3) at 2. Given the brevity of Plaintiff's pleading, the Court sets out the alleged facts in full:

> This case is founded upon Defendant's violations of 42 U.S.C. Section 1981, as evidenced by the following acts of Race Discrimination. Garibay, a Mexican American, can show through evidence at trial that his supervisor, Hector LNU, a Mexican National, bullied and harassed Garibay because of his Race (Mexican American). Garibay had capably served Sirizzotti until his wrongful termination on September 2, 2022. The stated reason for Plaintiff's termination was poor work quality (unsatisfactory job performance) and insubordination (failure to follow instructions from Supervisor). In truth and in fact, the stated reason was a pretext for the real reason, racial discrimination. Jim Center, Plaintiff's white Supervisor and 28 year employee, would compliment Garibay and sing his praises to anyone who inquired about Plaintiff's work performance. In a determined effort to queer Plaintiff's reputation as a capable heavy equipment operator and a responsible

> employee, Hector LNU falsely accused Garibay of using cocaine on the job. Hector LNU retaliated against Plaintiff because he opposed the racial discrimination. Garibay complained about the racial discrimination and the false accusations to Defendant's management but Office Manager, Paige Martin, terminated Plaintiff anyway. Defendant did nothing to stop the illegal conduct.

*Id.* (internal quotation marks omitted).

Defendant seeks dismissal through Fed. R. Civ. P. 12(b)(6) under the well-established standards for stating a claim set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It first argues that national origin claims are not actionable under § 1981. It further argues that, even if actionable, Plaintiff fails to plead sufficient allegations to state a § 1981 discrimination or retaliation claim.

Section 1981 provides for equal rights under the law. "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)). Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"For purposes of [§ 1981], the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Among other things, a § 1981 claim requires allegations that the defendant intended to discriminate on the basis of race. *See Morris v. Dillard's Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001) (addressing elements in context of summary judgment). To prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have

2

suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

As the Fifth Circuit held long ago, "while discrimination purely on the basis of national origin does not create a cause of action under section 1981, this court has held that a complaint by Mexican-Americans alleging racial and ethnic discrimination 'clearly states a cause of action' under the statute." *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B Mar. 1981).[1] To state a claim under § 1981, there must be an allegation of racial discrimination. *Olivares v. Martin*, 555 F.2d 1192, 1196 (5th Cir. 1977) (citing *Riley v. Adirondack Sch. for Girls*, 541 F.2d 1124 (5th Cir. 1976) (en banc)).

Here, as in *St. Francis*, "[t]he issue is whether [Plaintiff] has alleged racial discrimination within the meaning of § 1981." 481 U.S. at 609. Critical to that issue, the Supreme Court concluded that, if the plaintiff "can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Id*. at 613. Of course, Plaintiff does not have to prove anything at this early stage of the litigation. But even though Plaintiff does "not have to submit evidence to establish a prima facie case of discrimination at this stage, he [must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). The same is true with respect to retaliation claims.

According to Plaintiff's own factual allegations, his supervisor (identified by Defendant as Hector Garza), who is a Mexican National, "bullied and harassed" him because Plaintiff is "Mexican American." Plaintiff provides no other details of such harassment, although he does

---

[1] Because *Bullard* cites to a prior Fifth Circuit case that involved more than § 1981 claims, the clarity is not quite as clear as stated by *Bullard*. Nevertheless, the Fifth Circuit also cites other sources that it found persuasive enough to conclude that mixed racial and ethnic discrimination was actionable under § 1981.

allege that Garza falsely accused him of using cocaine on the job. Further, while Plaintiff vaguely alleges that he complained about the racial discrimination and false accusation to management, he provides nothing further about any protected activity. Moreover, he admits through his allegations that Defendant's Office Manager terminated him for reasons unrelated to his race or to the alleged false accusation regarding cocaine.

The parties disagree as to whether the alleged discrimination equates to race discrimination prohibited by § 1981. Relying on *St. Francis*, Plaintiff contends that his protected class is "Mexican American and the ancestry was a Hispanic born in the United States." Resp. at 4. He also relies on the *St. Francis* concurrence as bolstering his position. *Id*. at 5. Defendant, on the other hand, contends that the operative pleading alleges only national-origin discrimination. Mot. at 6-7.

Section 1981 "does not protect against discrimination based solely on the basis of place or nation of origin." *Garcia v. Key Energy Servs., LLC*, No. 1:15-CV-58-RP, 2015 WL 1809439, at *2 (W.D. Tex. Apr. 21, 2015) (citing *St. Francis*, 481 U.S. at 613). But "the line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of . . . origin,' is not a bright one." *St. Francis*, 481 U.S. at 614 (Brennan, J., concurring). The hallmark of a national origin claim is "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). As this Court has noted, "the EEOC's guidelines on discrimination define 'discrimination based on national origin' broadly to include acts of discrimination undertaken 'because an individual has the physical, cultural or linguistic characteristics of a national origin group.'" *Espina v. City of San Antonio*, No. SA-21-CV-01176-JKP, 2022 WL 3362286, at *3 (W.D. Tex. Aug. 15, 2022) (quoting 29 C.F.R. § 1606.1). Relying on that same regulation, Justice Brennan in his concurrence views one's ancestry as overlapping with one's national origin. *St. Francis*,

4

481 U.S. at 614 (Brennan, J., concurring) (citing § 1606.1).

While there is certainly no bright line between racial and national origin discrimination, the allegations in this case appear focused on where Plaintiff was born, i.e., national origin. Nevertheless, the Court will "pretermit the issue raised by the defendant as to whether [Plaintiff] stated a claim of discrimination based on national origin that is cognizable under section 1981," by assuming arguendo that § 1981 can apply to Mexican Americans like Plaintiff under facts like those in this case. *Vasquez v. McAllen Bag & Supply Co.*, 660 F.2d 686, 687 (5th Cir. Nov. 1981) (pretermitting issue in same manner); *see also*, *Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 901 n.9 (5th Cir. 1987) (assuming "arguendo, that the racial basis of section 1981 would be satisfied here by a showing of intentional ethnic discrimination against Hispanics"). "The line between national origin discrimination and racial discrimination is an extremely difficult one to trace. An attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate." *Bullard*, 640 F.2d at 634.

So, assuming that § 1981 applies, the pertinent question is whether Plaintiff has made enough factual allegations to plausibly state a claim of racial discrimination or retaliation. Whether such claims arise under § 1981 or Title VII, courts consider them "under the same rubric of analysis." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (citations omitted). To ultimately succeed on a § 1981 discrimination claim, a plaintiff must establish (1) membership in a racial minority; (2) an intent by the defendant to discriminate on the basis of race; and (3) such discrimination concerned enumerated § 1981 activities. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). "Section 1981 does not provide a general cause of action for race discrimination"; it instead "prohibits intentional race discrimination with respect to certain enumerated activities." *Id*. (footnotes and citations omitted). In this case, the third element relates to Plaintiff's "ability 'to make and enforce contracts' on nondiscriminatory terms." *Id*. The Fifth

Circuit, furthermore, has found that an employee's "employment-at-will status does not, taken alone, bar his § 1981 claim." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

Direct or circumstantial evidence may provide plaintiffs with a basis for allegations of racially motivation or animus. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). But "'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss." *Id* (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)). Nevertheless, "[a]n allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim.'" *Id.* (quoting *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished)).

In this case, Plaintiff provides no allegations to support the latter predicate for any § 1981 claim. There is no allegation that Garza treated anyone better than he treated Plaintiff. There are no facts alleged about any comparators at all. The mere conclusory statement that Garza bullied or harassed him because he is Mexican American is insufficient. This amounts to no more than a naked allegation of discriminatory intent, which is too conclusory to survive the instant motion to dismiss.

While Plaintiff identifies an adverse employment action, i.e., his termination, his allegations do not connect it to any racial animus. According to Plaintiff, Garza had a racial animus towards him, but there are no factual allegations that that supervisor took any adverse action against him. Nor is there any allegation that Garza's false accusation that Plaintiff used cocaine while on the job led to any adverse action. In short, there is no allegation that connects any adverse action to any discrimination or retaliation by the Mexican National supervisor. And there is no reasonable basis to infer from the factual allegations that the alleged retaliatory act, i.e., false-

6

ly accusing Plaintiff of using cocaine on the job, was any basis for his termination. For retaliation under § 1981, plaintiffs must allege (1) engagement in protected activity, (2) an adverse employment action, and "a causal link . . . between the protected activity and the adverse employment action." *Johnson*, 7 F.4th at 407-08 (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). Moreover, by failing to defend his retaliation claim in response to the motion to dismiss, Plaintiff has abandoned such claim. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff abandoned claim when she failed to defend in response to motion to dismiss).

Given the sparsity of the factual allegations, neither side focuses on the specific types of § 1981 claims that Plaintiff may be asserting. In addition to the wrongful discharge and retaliation claims addressed above, Plaintiff's operative pleading also suggests that he may be pursuing a hostile work environment claim. In an abundance of caution, the Court briefly considers such claim. But the conclusory allegations of harassment and bullying by Garza are not enough to plausibly state a claim for hostile work environment. One required element for such claim is that "the harassment complained of affected a term, condition, or privilege of employment," *Johnson*, 7 F.4th at 399, and Plaintiff's allegations provide no basis to reasonably infer that the bullying or harassment was enough to create a hostile work environment. "Harassment is sufficiently 'severe or pervasive enough' to create a hostile work environment when it is 'objectively hostile or abusive'—meaning 'an environment that a reasonable person would find hostile or abusive'—and is subjectively perceived by the victim as abusive." *Id.* at 400 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff's factual allegations are simply too conclusory to overcome Defendant's motion. To survive a motion to dismiss, factual allegations "must raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff's amended complaint does not exceed that

threshold. To infer discriminatory intent or a hostile work environment on the facts alleged amounts to no more than sheer speculation. The alleged facts do not state a plausible claim of intentional discrimination, retaliation, or hostile work environment. On the facts alleged here, even when viewing them in the light most favorable to Plaintiff, the Court grants the motion to dismiss.

In general, the Court considers whether it should grant a plaintiff leave to amend when it has determined that Fed. R. Civ. P. 12(b)(6) warrants dismissal. Leave to amend is not required, however, when plaintiffs have already pled their "best case." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Notably, a "party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id*.

Plaintiff has not asked to amend his complaint. Moreover, according to an attachment to the motion, Defendant complied with this Court's standing order and Plaintiff did not amend his complaint. The Court's Standing Order is intended to advance cases efficiently and to minimize the cost of litigation. *See* ECF No. 3 at 1. Through this Standing Order, "the Plaintiff has already been provided notice of the proposed deficiencies and the opportunity to amend the pleading prior to the filing of a Motion to Dismiss." *Id*. Thus, "if the Court finds any Motion to Dismiss has merit, the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss." *Id*. at 1-2 (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002)). Based upon all of the foregoing, the Court finds that Plaintiff has stated his best case against Defendant and thus declines to exercise its discretion to permit the filing of another amended complaint.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 12). Contemporaneously with this order, the Court will issue a final judgment to dismiss this action with prejudice.

**SIGNED this 2nd day of December 2024.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**